MISSIONARY SOCIETY OF CONNECTICUT *v.* BOARD OF PARDONS AND PAROLES
(SC 17565)

Sullivan, C. J., and Norcott, Katz, Palmer and Vertefeuille, Js.*

Argued January 11—officially released May 16, 2006

* The listing of justices reflects their seniority status on this court as of the date of argument.

*James A. Wade,* with whom was *Andrea F. Donovan,* for the appellant (plaintiff).

*Steven R. Strom,* assistant attorney general, with whom were *Henri Alexandre,* assistant attorney general, and, on the brief, *Richard Blumenthal,* attorney general, for the appellee (defendant).

*Opinion*

SULLIVAN, C. J. The dispositive issue in this appeal is whether the trial court properly dismissed for lack of standing the application of the plaintiff, the Missionary Society of Connecticut, seeking a writ of mandamus ordering the defendant, the state board of pardons and paroles, to promulgate regulations regarding the commutation of death penalty sentences. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. The plaintiff "is the corporate arm of the Connecticut Conference of the United Church of Christ, of which there are over 100,000 members. The plaintiff has expressed long-standing opposition to the death penalty in Connecticut, and continues to hold such opposition." In February, 2005, the plaintiff submitted two letters to the defendant requesting that the defendant adopt regulations regarding the commutation of death sentences in this state. The plaintiff claimed that it was making the request pursuant to General Statutes § 4-174[1] and that the defendant was required

---

[1] General Statutes § 4-174 provides in relevant part: "Any interested person may petition an agency requesting the promulgation, amendment, or repeal of a regulation. Each agency shall prescribe by regulation the form for petitions and the procedure for their submission, consideration, and disposition. Within thirty days after submission of a petition, the agency either

to promulgate the regulations pursuant to General Statutes § 4-167 (a) (2).[2] The defendant denied the request on March 4, 2005, stating that "regulation-making is required if an authorizing statute specifically requires it, or in the absence of a specific statutory requirement, if the 'policy' affects substantive private rights. Since the courts, including the Connecticut Supreme Court in . . . *Missionary Society of Connecticut* v. *Board of Pardons & Paroles*, 272 Conn. 647 [866 A.2d 538 (2005)], have made it clear that consideration of commutation of the penalty of death involves no substantive rights retained by the prisoner, it would appear to us that regulation-making is not required in this instance." The defendant did, however, provide the plaintiff with copies of its newly adopted procedures concerning the commutation of death sentences.

The plaintiff subsequently brought this mandamus action in Superior Court seeking to compel the defendant to commence rule making proceedings pursuant to General Statutes § 54-124a (d),[3] which mandates that the defendant, through its chairperson, adopt "policies in all areas of pardons and paroles including, but not limited to, granting pardons, commutations of punishments or releases, conditioned or absolute, in the case

shall deny the petition in writing stating its reasons for the denials or shall initiate regulation-making proceedings . . . ."

[2] General Statutes § 4-167 (a) (2) provides: "In addition to other regulation-making requirements imposed by law, each agency shall . . . adopt as a regulation rules of practice setting forth the nature and requirements of all formal and informal procedures available provided such rules shall be in conformance with the provisions of this chapter . . . ."

[3] General Statutes § 54-124a (d) provides in relevant part: "The chairperson shall be the executive and administrative head of said board and shall have the authority and responsibility for . . . (2) adopting policies in all areas of pardons and paroles including, but not limited to, granting pardons, commutations of punishments or releases, conditioned or absolute, in the case of any person convicted of any offense against the state and commutations from the penalty of death, risk-based structured decision making and release criteria . . . ."

of any person convicted of any offense against the state and commutations from the penalty of death . . . ." The defendant thereafter filed a motion to dismiss, arguing, inter alia, that the court lacked subject matter jurisdiction because the plaintiff lacked standing and was not aggrieved. The trial court dismissed the action for lack of standing, finding that "nothing in the language of § 4-174 . . . specifically grants standing for any person to commence an action in [the trial] court." The court also stated that it was not aware of any other statute that would confer statutory aggrievement in the present case. The trial court also concluded that the plaintiff had failed to satisfy the two-pronged test for classical aggrievement, because "[n]either in its complaint nor in its argument [had] the plaintiff presented facts that establish[ed] an interest different from the 'general interest that all members of the community share.'" Despite its finding that the plaintiff lacked standing, the trial court considered the merits of the plaintiff's claim "because of conceptual congruity between the notion of standing and at least one of the required elements of mandamus actions." The court concluded that, even if the plaintiff had a clear legal right to have the board issue regulations concerning commutation, "the [defendant] at the very least [had] exercised its judgment in a manner consistent with the statutory directives," and was not required to issue formal regulations in order to comply with the statutory mandate of § 4-174. The plaintiff appealed from the trial court's judgment to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff claims that it had a statutory right under § 4-174 to compel the defendant to promulgate regulations in accordance with § 54-124a and that the defendant's refusal to promulgate regulations violated the separation of powers provision of the Connect-

icut constitution and principles of due process. The defendant counters, inter alia, that (1) the trial court lacked subject matter jurisdiction over the case because the plaintiff lacks standing, (2) § 54-124a imposes no statutory duty upon the defendant to adopt regulations concerning commutations of the sentence of death, and (3) the defendant's policy on commutations does not affect private rights and, therefore, there is no statutory or constitutional requirement that it be implemented through a regulation. We conclude that the trial court properly determined that the plaintiff lacked standing.

As a preliminary matter, we set forth the standard of review. "If a party is found to lack standing, the court is without subject matter jurisdiction to determine the cause. . . . A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . .

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.) *Frillici* v. *Westport*, 264 Conn. 266, 280, 823 A.2d 1172 (2003).

"Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to

ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented. . . .

"Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the agency's decision has specially and injuriously affected that specific personal or legal interest. . . .

"Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Stauton* v. *Planning & Zoning Commission*, 271 Conn. 152, 157–58, 856 A.2d 400 (2004).

The plaintiff in the present case makes no claim that it has a legally protectible interest in the commutation of death sentences. See *Connecticut Board of Pardons* v. *Dumschat*, 452 U.S. 458, 464, 101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981); *Missionary Society of Connecticut* v. *Board of Pardons & Paroles*, supra, 272 Conn. 652; *McLaughlin* v. *Bronson*, 206 Conn. 267, 271, 537 A.2d 1004 (1988). Indeed, it is undisputed that no person has any such interest. See *McLaughlin* v. *Bronson*, supra, 271. Rather, the plaintiff claims that it has a statutory right under § 4-174 to petition the defendant for regulations concerning the commutation of death sentences. It argues that the plain language of the statute confers the right to petition for regulations on "interested" per-

sons and that it is an "interested person" because it is "involved in the legislative process as a corporation of this state."[4] In support of this claim, the plaintiff relies on the dictionary definition of "interested" as "being affected or involved"; Merriam-Webster's Collegiate Dictionary (10th Ed. 1993); and General Statutes § 4-166 (9), which defines " '[p]erson' " as "any individual, partnership, corporation, limited liability company, association, governmental subdivision, agency or public or private organization of any character . . . ." Thus, the plaintiff implicitly argues that § 4-174 was intended to confer a statutory right to petition for regulations on persons who have no specific, legally protectible interest that will be, or potentially could be, affected by the regulations.

We are not persuaded. The plaintiff has provided no authority for the proposition that, in limiting the right conferred by § 4-174 to interested persons, the legislature intended to include all persons who are generally affected by or involved in the legislative process. As a practical matter, such an interpretation would render the word interested superfluous and would confer on any person the right to petition an agency for regulations. If the legislature had intended to grant such a broad right, it easily could have done so expressly. See, e.g., General Statutes § 22a-16 ("any person . . . [or] corporation . . . may maintain an action . . . for declaratory and equitable relief against the state . . . for the protection of the public trust in the air, water and other natural resources of the state from unreasonable pollution, impairment or destruction"); General Statutes § 13a-50 ("any person may appear and be heard in relation to [the] application [to discontinue a high-

---

[4] The plaintiff does not explain how it was "involved" in the legislative process, but we assume that it was referring to activities such as submitting the petition for regulations, bringing this lawsuit and attempting to persuade individual legislators to abolish the death penalty.

way]"). Moreover, the plaintiff has provided, and we can conceive of, no public policy reasons to read the statute so broadly. Cf. *Greenwich* v. *Connecticut Transportation Authority*, 166 Conn. 337, 343, 348 A.2d 596 (1974) (by enacting § 22a-16 and providing " 'any person' " with right to bring action to protect environment, "the legislature expanded the number of potential guardians of the public interest in the environment into the millions, instead of relying exclusively on the limited resources of a particular agency").

We conclude, therefore, that § 4-174 was not intended to grant the right to petition for regulations to persons who have no specific, legally protectible interest that would be, or potentially could be, affected by the regulations. Accordingly, we conclude that the plaintiff was not aggrieved by the defendant's denial of its request for the promulgation of regulations concerning commutation of the death penalty pursuant to § 4-174 and, therefore, has no standing to challenge that ruling. For the same reasons, we conclude that the plaintiff has no standing to raise its constitutional claim. Accordingly, we conclude that the trial court properly dismissed the plaintiff's application for a writ of mandamus.

The judgment is affirmed.

In this opinion the other justices concurred.