IN RE JUDICIAL INQUIRY NO. 2005-02

Flynn, C. J., and Bishop, DiPentima, McLachlan and Gruendel, Js.

Argued September 6—officially released October 25, 2007[1]

*Michael A. Georgetti*, for the petitioner.

*Harry D. Weller*, senior assistant state's attorney, for the state.

*Adam Mauriello*, for the intervenor.

---

[1] October 25, 2007, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

GRUENDEL, J. Before us is a petition for review of the order of the panel of judges appointed pursuant to General Statutes § 54-47b (4) to receive applications for investigations into the commission of crimes (panel) denying the request for disclosure filed by the state of Connecticut (state). For the reasons that follow, we grant review, reverse the determination of the panel and remand the matter for further proceedings.

The facts are undisputed. In the fall of 2005, John A. Connelly, state's attorney for the judicial district of Waterbury, filed with the panel an application for an investigation into the commission of a crime stemming from the shooting death of Jashon Bryant on May 7, 2005. The panel approved the application, and the Honorable George N. Thim, a judge of the Superior Court, was appointed as an investigatory grand jury. Pursuant to General Statutes § 54-47e, both the application for the investigatory grand jury and a copy of the panel's order thereon were sealed. In addition, the original order and a copy of the application were transmitted to the investigatory grand jury, as required by General Statutes § 54-47d (b). Judge Thim thereafter conducted an investigation, at the conclusion of which he issued a report that concluded that there was probable cause to believe that the petitioner, Officer Robert Lawlor of the Hartford police department, committed a crime.[2] On that basis, an arrest warrant signed by the court, *Damiani, J.*, subsequently was issued, charging the

---

[2] The ultimate task of the investigatory grand jury is to make a finding to the court; it cannot indict. As our Supreme Court has explained, "[i]nvestigating grand juries neither try nor condemn nor accuse; they only inquire and report." *In re Investigation of the Grand Juror*, 188 Conn. 601, 605, 452 A.2d 935 (1982). "The inquiry . . . is made by an independent judicial officer and is investigatory and nonadjudicative. An inquiry is conducted and a report is made to the court. The inquiry has no other purpose or function . . . ." *State* v. *Moynahan*, 164 Conn. 560, 566, 325 A.2d 199, cert. denied, 414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973).

petitioner with manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and assault in the first degree in violation of General Statutes § 53a-59 (a) (5). The petitioner was arrested on June 22, 2006.

On June 14, 2007, the state filed with the panel a request for disclosure of "a copy of the application for the appointment of a grand juror filed by [Connelly] and a copy of the order issued by the [panel] appointing the [investigatory grand jury]." That filing concluded that "it is requested that for the purpose of full and fair discovery, such material be ordered unsealed for viewing by this office and the [petitioner]." In denying that request, the order of the panel stated: "[The] request for disclosure is denied, pursuant to § 54-47e, which specifically requires that any application filed with the panel and any order authorizing the investigation 'shall be sealed.' "

The petitioner appealed to this court by way of a petition for review of the panel's order.[3] The panel subsequently filed a motion to intervene, which we granted. The petitioner, the panel and the state all have submitted memoranda of law, which present three issues for our consideration. They are (1) whether this court lacks subject matter jurisdiction over the petition for review, (2) whether the petitioner is aggrieved by the order of the panel and (3) whether the petitioner is entitled to disclosure of the requested materials.[4] We address each in turn.

I

The panel contends that this court lacks subject matter jurisdiction to consider the petition for review. Specifically, it claims that "the Investigatory Grand Jury

---

[3] Sealed exhibits from the investigation were filed with this court. We have not unsealed those exhibits and, therefore, are unaware of precisely what materials they contain.

[4] The petitioner also argues that he is entitled to disclosure of the requested materials under his state and federal constitutional rights to exculpatory information and due process, and in order to properly move to suppress

Act [General Statutes § 54-47a et seq.] makes no provision for appellate review of the panel's order denying the state's request for disclosure." Both the state and the petitioner disagree, maintaining that General Statutes § 54-47g (a) contains such a provision.

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). It involves a question of law over which our review is plenary. *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 283, 914 A.2d 996 (2007). Jurisdiction of the subject matter "cannot be waived or conferred by consent either in the trial court or [on appeal]. . . . Once brought to the attention of the court, regardless of the form of the motion, it must be acted upon. . . . Moreover, whenever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to previous rulings." (Citations omitted; internal quotation marks omitted.) *In re Judicial Inquiry No. 85-01*, 221 Conn. 625, 629, 605 A.2d 545 (1992). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 778–79, 900 A.2d 1 (2006).

Section 54-47g (a) provides: "Within sixty days of the conclusion of the investigation, the investigatory grand jury conducting such investigation shall file its finding with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d, and shall file a copy of its finding with the panel and with the Chief State's Attorney or

the evidence produced by the investigatory grand jury. In light of our disposition of the third issue in this appeal, we do not address those claims.

a state's attorney if such Chief State's Attorney or state's attorney made application for the investigation. The stenographer shall file any record of the investigation with the court of the judicial district designated by the Chief Court Administrator pursuant to subsection (a) of section 54-47d and the panel and the Chief State's Attorney or a state's attorney, if such Chief State's Attorney or state's attorney made application for the investigation, shall have access to such record upon request made to the clerk of the court without a hearing. Such finding shall state whether or not there is probable cause to believe that a crime or crimes have been committed. Except as otherwise provided in this section, any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) of this section shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest, except that no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. Any person aggrieved by an order of the panel shall have the right to appeal such order by filing a petition for review with the Appellate Court within seventy-two hours from the issuance of such order." Simply put, § 54-47g (a) sets forth the mechanism by which "any person" may seek disclosure of "any part of the record" of the investigatory grand jury, as well as the right of an aggrieved person to appeal to this court in the event that the panel denies the request for disclosure.[5]

---

[5] Accord Practice Book § 78-1, which provides: "Any person aggrieved by an order of a panel or an investigatory grand jury pursuant to General Statutes § 54-47g may seek review of such order by filing a petition for

The panel claims that the order at issue in the present appeal falls outside the ambit of § 54-47g (a). Its argument is twofold. First, it insists that the requested documents are not part of the record of the investigatory grand jury. Second, the panel posits that § 54-47e forbids disclosure of those documents at any time and under any circumstances.

## A

### The Record of the Investigatory Grand Jury

The panel claims that the application for the investigatory grand jury and its order thereon are not part of the record of the investigatory grand jury. Because § 54-47g (a) charges the stenographer with the responsibility to "file any record of the investigation," the panel argues that the record is limited to testimony and exhibits presented to the investigatory grand jury. Our examination of the relevant statutes indicates otherwise.

Unlike other terms concerning the investigatory grand jury, the term "record" is not defined in § 54-47b. In the absence of a statutory definition, "it is appropriate to look to the common understanding of the term as expressed in a dictionary." (Internal quotation marks omitted.) *State* v. *Boyd*, 272 Conn. 72, 79 n.5, 861 A.2d 1155 (2004). Black's Law Dictionary (7th Ed. 1999) defines the record as "the official report of the proceedings in a case, *including the filed papers*, a verbatim transcript of the trial or hearing (if any), and tangible exhibits." (Emphasis added.) Cf. Practice Book § 61-10 (term "record" includes all trial court decisions, documents and exhibits necessary and appropriate for

review with the appellate court within seventy-two hours after the issuance of the order. The filing of any such petition for review shall stay the order until the final determination of the petition. The appellate court shall hold an expedited hearing on such petition. After such hearing, the appellate court may affirm, modify or vacate the order reviewed."

review). Thus, the term generally has an expansive meaning.

General Statutes § 54-47d (a) provides that, once the panel approves an application for an investigatory grand jury and orders an investigation, the chief court administrator is required to "(1) appoint an investigatory grand jury to conduct the investigation, and (2) designate the court location in the judicial district where any motions to quash and any contempt proceedings shall be heard and *any findings and records of the investigation shall be filed.*" (Emphasis added.) Even more significantly, the panel is obligated to "transmit to the investigatory grand jury . . . the original order and a copy of the application filed with the panel." General Statutes § 54-47d (b). Accordingly, the investigatory grand jury had in its possession the documents requested by the state in the present case. Upon completion of the investigation, the investigatory grand jury is required to "file its finding with the court of the judicial district designated by the Chief Court Administrator . . . and shall file a copy of its finding with the panel . . . . The stenographer shall file *any record* of the investigation with the court of the judicial district designated by the Chief Court Administrator . . . ." (Emphasis added.) General Statutes § 54-47g (a). The repeated references to "any record" and the specific legislative mandate that the application and order be transmitted from the panel to the investigatory grand jury at the outset of the investigation persuade us that those materials constitute part of the record of the investigatory grand jury. The statutes do not indicate otherwise.[6]

The panel's contention that the "record" includes only testimony and exhibits presented to the investigatory grand jury is a restrictive reading of that term. We

[6] The legislative history of the Investigatory Grand Jury Act sheds no light on whether the term "record," as it is used therein, encompasses the application for the investigatory grand jury and the panel's order thereon.

refuse to impute to the legislature an intent to so limit that term where such intent does not otherwise appear in the language of the statute. *Stein* v. *Hillebrand,* 240 Conn. 35, 40, 688 A.2d 1317 (1997). We conclude that the application and order transmitted by the panel pursuant to § 54-47d (b) are part of the record of the investigatory grand jury.

B

General Statutes §§ 54-47e and 54-47g

Alternately, the panel claims that § 54-47e forbids disclosure of the application and order at any time and under any circumstances. Section 54-47e provides: "Any order authorizing the investigation into the commission of a crime or crimes and any application filed with the panel pursuant to section 54-47c or subsection (c) of section 54-47d shall be sealed. The panel shall submit to the Chief Court Administrator a summary of the scope of the investigation [and] any recommendation as to the court location at which any motions to quash and any contempt proceedings are to be heard and the finding and record of the investigation are to be filed. Such summary shall be public unless the panel determines, by majority vote, that such summary be sealed for purposes of (1) ensuring the public safety of any individual, (2) ensuring that the investigation would not be adversely affected or (3) complying with other provisions of the general statutes or rules of court which prohibit disclosure of such information. Any investigation by the investigatory grand jury shall be conducted in private, provided the panel, by a majority vote, may order the investigation or any portion thereof to be public when such disclosure or order is deemed by the panel to be in the public interest." The panel argues that the statute evinces an absolute prohibition by the legislature on the disclosure of applications for an investigatory grand jury and orders thereon.

Before entertaining the merits of that argument, we note that the panel's position presents a question of statutory interpretation, which, as a question of law, is subject to plenary review. *Middlebury* v. *Dept. of Environmental Protection*, 283 Conn. 156, 166, 927 A.2d 793 (2007). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Renaissance Management Co.* v. *Connecticut Housing Finance Authority*, 281 Conn. 227, 231, 915 A.2d 290 (2007). "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Connecticut Ins. Guaranty Assn.* v. *State*, 278 Conn. 77, 82, 896 A.2d 747 (2006).

When the meaning is ambiguous, "we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . [O]ur construction of the [act] should make every part operative and harmonious with every other part

insofar as is possible . . . . In applying these principles, we are mindful that the legislature is presumed to have intended a just and rational result. . . . In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language. . . . Finally, it is our judicial responsibility in considering a statutory scheme . . . that has obvious and significant gaps and inconsistencies in it, to attempt to make sense of it as much as possible." (Citations omitted; internal quotation marks omitted.) *Fredette* v. *Connecticut Air National Guard*, 283 Conn. 813, 821–22, 930 A.2d 666 (2007).

The respective arguments of the parties underscore the ambiguity in the statutory scheme governing the investigatory grand jury. Although § 54-47g (a) permits any person to file an application with the panel for disclosure of any part of the record of the investigatory grand jury, which we have determined includes the application and order, § 54-47e provides that those two documents "shall be sealed. . . ." Because the statutory scheme "is difficult to construe with complete consistency"; id., 820; we consider extratextual evidence in resolving the issue before us.

The investigatory grand jury, like the panel, is entirely a creature of statute. See *Connelly* v. *Doe*, 213 Conn. 66, 70, 566 A.2d 426 (1989). First enacted in 1941, the statutory scheme governing the investigatory grand jury underwent significant revision two decades ago. As our Supreme Court explained in *State* v. *Rivera*, 250 Conn. 188, 203–206, 736 A.2d 790 (1999): "[T]he legislative genealogy of § 54-47g reveals a distinct trend away from a policy of rigid nondisclosure in grand jury matters. The first statutory provision to include procedures for investigatory grand juries, which was enacted in 1941, allowed the proceedings, testimony and final report to be made public in the discretion of the trial court. . . .

In 1985, the legislature significantly expanded the statutory provisions relating to investigatory grand juries for the purpose of streamlining the grand jury process, increasing the accountability and openness of such investigations and expanding public access to the findings and records. . . . In 1987, the legislature further increased the accessibility of grand jury materials by adding a provision that allowed state's attorneys to receive the record and transcripts of grand jury proceedings upon request and without a hearing. . . . In 1988, the legislature cut back even further on the confidentiality of the grand juror's findings and conclusions. Public Acts 1988, No. 88-345 . . . provides in relevant part that '[t]he finding of the investigation shall be open to public inspection and copying . . . seven calendar days after it has been filed, unless within that period the chief state's attorney or a state's attorney . . . [requests] that a part or all of such finding not be so disclosed. The finding may include all or such part of the record as the investigatory grand jury may determine . . . .' This amendment, in effect, established a rebuttable presumption of disclosure . . . . In the same public act, the legislature also authorized 'any person' to 'file an application with the [grand jury] panel for disclosure of any . . . part of [a grand jury] record' . . . and empowered the panel to grant such application if, after notice and a hearing, it determines, by a majority vote, that disclosure would 'be in the public interest.' . . . This development of § 54-47g demonstrates that, over time, the legislature has provided for increased disclosure of grand jury proceedings and testimony. Recognizing the purposes behind the common-law presumption regarding the confidentiality and secrecy of grand jury proceedings, the statute favors disclosure after the grand jury has completed its investigation." (Citations omitted.)

At first blush, that documented policy favoring disclosure seemingly conflicts with the mandate of § 54-47e

that the application and order shall be sealed. A closer examination reveals otherwise.

The statutory scheme surrounding the investigatory grand jury delineated in General Statutes §§ 54-47a through 54-47h proceeds in a chronological manner. General Statutes § 54-47c details the procedures by which an application for an investigation is submitted and approved, while § 54-47d concerns the appointment, duration and scope of the investigatory grand jury. Next comes § 54-47e, which, by its plain language, prefaces both the actual investigation, the conduct of which is governed by General Statutes § 54-47f, and the resulting finding of the investigatory grand jury filed pursuant to § 54-47g. Because § 54-47e prefaces the actual investigation, one justification of the mandate requiring the sealing of the application and order contained therein is simply an affirmation that, prior to the conclusion of the investigation, secrecy is of paramount concern. Our Supreme Court has emphasized the importance of safeguarding the confidentiality of grand jury proceedings and recognized the significance of secrecy "when it was necessary to further the purposes of grand jury confidentiality." *State* v. *Rivera*, supra, 250 Conn. 202; see also *State* v. *Canady*, 187 Conn. 281, 287, 445 A.2d 895 (1982) (traditional secrecy of grand jury proceedings well entrenched in common law). At the same time, our Supreme Court has observed that "[w]hen the investigation has been completed, the persuasive force of the arguments in favor of secrecy are greatly diminished." *State* v. *Rivera*, supra, 203. Consistent with that critical distinction, the sealing mandate in § 54-47e serves to protect the confidentiality of a pending investigation of the grand jury.

Notably, § 54-47e is directed at the conduct of the panel. The statute directly preceding it indicates that not one, but two copies of the application and order are promulgated. See General Statutes § 54-47d (b). One

is transmitted to the investigatory grand jury; the other is retained by the panel. A fair reading of § 54-47e is that the legislature, mindful that the investigatory grand jury obtains copies of the application and order, inserted the sealing provision in that statute as a check on the panel's conduct to further safeguard the work of the investigatory grand jury.

In that vein, it is significant that § 54-47g (a) is directed at the concluded investigation. The provision permitting any person to file an application with the panel for any part of the record of the investigatory grand jury pertains to the investigatory grand jury's copies of the application and order, not those of the panel. Moreover, § 54-47g (b) provides in relevant part that the finding of the investigation "may include all or such part of the record as the investigatory grand jury may determine, except that no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless such individual requests the release of such part of the record. . . ." As the application and order transmitted from the panel to the investigatory grand jury pursuant to § 54-47d (b) form part of the record before it, § 54-47g (b) authorizes the investigatory grand jury to include those materials in its finding.[7] The panel's contention that § 54-47e prohibits disclosure of the application and order at any time and under any circumstances yields a bizarre result in light of that statutory authorization. It is axiomatic that we decline to read statutes so as to reach bizarre or absurd results. See State v. Rivera, supra, 250 Conn. 200.

Section 54-47e, which provides that the application and order "shall be sealed," contains another crucial

---

[7] The finding of the investigatory grand jury generally is made public. See General Statutes § 54-47g (b).

provision: "Any investigation by the investigatory grand jury shall be conducted in private, provided the panel, by a majority vote, may order the investigation or any portion thereof to be public when such disclosure or order is deemed by the panel to be in the public interest." That provision comports with the policy favoring disclosure discussed in *Rivera*. Moreover, that provision complements the disclosure provision contained in § 54-47g (a).[8] Both reflect the legislative determination that disclosure is warranted when the panel, in its discretion, determines that it is in the public interest.

"In the interpretation of a statute, a radical departure from an established policy cannot be implied. It must be expressed in unequivocal language." (Internal quotation marks omitted.) *Fredette* v. *Connecticut Air National Guard*, supra, 283 Conn. 822. The policy underlying § 54-47g is one favoring disclosure once the investigation is concluded. As our Supreme Court stated in *Rivera*, "the statute favors disclosure after the grand jury has completed its investigation." *State* v. *Rivera*, supra, 250 Conn. 206. Had the legislature wanted to prohibit disclosure of the application and order at any time and under any circumstances, it could have explicitly and unequivocally done so, as it has elsewhere in that statute. See General Statutes § 54-47g (b) ("no part of the record shall be disclosed which contains allegations of the commission of a crime by an individual if the investigatory grand jury failed to find probable cause that such individual committed such crime unless

---

[8] General Statutes § 54-47g (a) provides in relevant part: "Except as otherwise provided in this section, any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) of this section shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest . . . ."

such individual requests the release of such part of the record"). That it has not informs our analysis.

Our aim is to interpret §§ 54-47e and 54-47g so as to make every part operative and harmonious with every other part insofar as is possible. *Fredette* v. *Connecticut Air National Guard,* supra, 283 Conn. 822. We therefore conclude that the application for the investigatory grand jury and the panel's order thereon must be sealed at the outset of the investigation and remain so unless, following the conclusion of the investigation and the filing of the finding and record of the investigatory grand jury, a majority of the panel deem their disclosure to be in the public interest.

In the present case, the state filed with the panel an application for disclosure of part of the record of the investigatory grand jury pursuant to § 54-47g (a). When the panel denied that request, the petitioner filed a petition for review with this court, as directed by that statute. Accordingly, this court is vested with jurisdiction of the subject matter.

II

The state raises the question of whether the petitioner is aggrieved by the order of the panel denying the request for disclosure.[9] Aggrievement implicates a party's standing. *In re Allison G.,* 276 Conn. 146, 156, 883 A.2d 1226 (2005). "Standing is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with

---

[9] Although the state questions whether the petitioner is classically aggrieved, it nonetheless concludes that "[i]n sum, the [petitioner] may be in the best position to challenge the panel's determination that it does not have to disclose the application and order."

each view fairly and vigorously represented. . . . Two broad yet distinct categories of aggrievement exist, classical and statutory. . . . Classical aggrievement requires a two part showing. First, a party must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest that all members of the community share. . . . Second, the party must also show that the . . . decision has specially and injuriously affected that specific personal or legal interest. . . . Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Missionary Society of Connecticut* v. *Board of Pardons & Paroles*, 278 Conn. 197, 201–202, 896 A.2d 809 (2006).

Section 54-47g (a) provides in relevant part that "[a]ny person aggrieved by an order of the panel shall have the right to appeal [the] order [of the panel on the request to disclose] by filing a petition for review with the Appellate Court within seventy-two hours from the issuance of such order." The petitioner is such a person. He was the subject of the investigation. The finding of the investigatory grand jury concluded that there was probable cause to believe that he committed a crime. Moreover, on the basis of that finding, an arrest warrant issued, and the petitioner's arrest followed.

In the request for disclosure, the state asserted that the requested materials should be unsealed "for the purpose of full and fair discovery."[10] The petitioner

---

[10] Even if we assume arguendo that the requested materials are among the sealed exhibits filed with this court, we repeat that we have not examined those exhibits. See footnote 3. As a result, we cannot evaluate the content of those materials or whether they implicate the petitioner's state and federal constitutional rights to exculpatory information and due process, as would the panel in evaluating whether their disclosure is in the public interest.

agrees. In his reply memorandum, he states: "[E]ach allegation of the arrest warrant application is one produced by the investigatory grand jury. If the petitioner is able to demonstrate that the investigatory grand jury was illegal in its creation or acted in excess of its mandate, the petitioner would be able to challenge the evidence gathered. . . . Whether by motion to dismiss, motion to suppress, motion in limine, use as impeachment evidence or by any other use of exculpatory or inconsistent evidence, the only way a defendant can meaningfully access his statutory and constitutional remedies would be to examine the application and order."[11]

As already noted, the legislature has provided for increased disclosure of grand jury proceedings and testimony. See *State* v. *Rivera*, supra, 250 Conn. 202. Permitting petitions for review to this court was such an amendment to that statutory scheme. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *West Farms Mall, LLC* v. *West Hartford*, 279 Conn. 1, 25, 901 A.2d 649 (2006). The petitioner faces trial following an arrest predicated on the investigatory grand jury's finding that probable cause existed to believe that he committed a crime. As such, we conclude that he is aggrieved under § 54-47g (a).

### III

The remaining issue is whether the petitioner is entitled to disclosure of the requested materials. That question is not for this court to resolve.

When a request to disclose part of the record of the investigatory grand jury is filed pursuant to § 54-47g

[11] Although it presently is not necessary to evaluate the merits of those assertions, they present a colorable claim that the documents could be useful to the petitioner's defense.

(a), that statute requires the panel to hold a hearing thereon to ascertain whether disclosure is in the public interest.[12] The panel did not comply with that statutory requirement in the present case. Nevertheless, it remains the task of the panel to make that factual determination. "It is axiomatic that it is not the function of this court to find facts." *Jewish Home for the Elderly of Fairfield County, Inc.* v. *Cantore*, 96 Conn. App. 326, 335, 901 A.2d 49 (2006). Moreover, "[the] panel is in a better position to determine what the public interest requires in this case because of its prior familiarity with the origin and scope of the judicial inquiry ordered by it." *In re Grand Jury Investigation by Judge Barry R. Schaller*, 20 Conn. App. 447, 451, 567 A.2d 1255 (1990). Consequently, in instances in which the panel failed to conduct the requisite hearing, this court has remanded the matter to the panel for that hearing. See id.; *In re Grand Jury Investigation by Judge Hugh C. Curran*, 19 Conn. App. 230, 234, 561 A.2d 974 (1989).

The matter is remanded to the grand jury panel for a determination of whether the public interest requires disclosure, and, if so, for a further determination of those to whom disclosure should be made, and the conditions, if any, that should be imposed.

In this opinion the other judges concurred.

---

[12] "In order for a petitioner to make the required showing to justify the disclosure of the finding and record of a grand jury investigation, a hearing is necessary. A petitioner cannot meet the burden of showing that disclosure is in the public interest without a forum in which to do so." *In re Grand Jury Investigation by Judge Hugh C. Curran*, 19 Conn. App. 230, 234, 561 A.2d 974 (1989).