IN RE JUDICIAL INQUIRY NUMBER 2005-02
(SC 18069)

Rogers, C. J., and Norcott, Katz, Vertefeuille and Zarella, Js.

Argued February 11—officially released August 25, 2009

*Proloy K. Das*, with whom was *Glenn E. Coe*, for the appellant (intervenor three judge panel).

*Michael A. Georgetti*, for the appellee (petitioner Robert Lawlor).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, *Susan C. Marks*, supervisory assistant state's attorney, and *Kevin C. Doyle*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ZARELLA, J. The issue ultimately dispositive of this certified appeal is whether the Appellate Court correctly construed General Statutes §§ 54-47b through 54-

47g (grand jury statutes). The intervening three judge panel (panel) appealed from the judgment of the Appellate Court, which concluded that the panel is required to hold a hearing to determine whether the petitioner, Robert Lawlor, is entitled to disclosure of the state's application for, and the panel's order authorizing, a grand jury investigation pursuant to the grand jury statutes. The panel asserts that General Statutes § 54-47e[1] is nondiscretionary in that it provides that the application and order "shall be sealed," without recourse through appellate review.[2] The petitioner, on the other hand, joined in this appeal by the state,[3] claims that § 54-47g (a)[4] controls the disposition of the documents at issue and requires that the panel hold a hearing to consider whether disclosure of the application and order would be in the public interest. The petitioner further argues that the proper application of § 54-47g precludes this court from asserting jurisdiction over this appeal. Because we agree with the panel that the grand jury statutes do not contemplate the disclosure of the sealed

[1] General Statutes § 54-47e provides in relevant part: "Any order authorizing the investigation into the commission of a crime or crimes and any application filed with the panel pursuant to section 54-47c or subsection (c) of section 54-47d shall be sealed. . . ."

[2] The panel also asserts that, even if § 54-47g (a) is interpreted so as to provide the petitioner with appellate review, the express directive of § 54-47e that "[a]ny order authorizing the investigation into the commission of a crime or crimes and any application" related thereto "shall be sealed" renders the case nonjusticiable. Our resolution of the panel's first claim renders a discussion of this claim unnecessary.

[3] Because the state and the petitioner take essentially the same position with respect to the relevant issues, we do not refer to the state separately unless failing to do so would lead to confusion.

[4] General Statutes § 54-47g (a) provides in relevant part: "Except as otherwise provided in this section, any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) of this section shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest . . . ."

application and order, we conclude that the hearing
that the Appellate Court ordered is contrary to the grand
jury statutes. Therefore, we reverse the judgment of
the Appellate Court and remand the case to that court
with direction to deny the relief requested in the petition
for review.

The following facts and procedural history, which
are set forth in the Appellate Court's opinion, are undis-
puted. "In the fall of 2005, John A. Connelly, [the] state's
attorney for the judicial district of Waterbury, filed with
the panel an application for an investigation into the
commission of a crime [or crimes] stemming from the
shooting death of Jashon Bryant on May 7, 2005. The
panel approved the application, and the Honorable
George N. Thim, a judge of the Superior Court, was
appointed as an investigatory grand jury. Pursuant to
. . . § 54-47e, both the application for the investigatory
grand jury and a copy of the panel's order thereon were
sealed. In addition, the original order and a copy of the
application were transmitted to the investigatory grand
jury, as required by General Statutes § 54-47d (b). Judge
Thim thereafter conducted an investigation, at the con-
clusion of which he issued a report that concluded that
there was probable cause to believe that the petitioner
. . . [a police officer with] the Hartford police depart-
ment, committed [one or more] crime[s].[5] On that basis,
an arrest warrant signed by the court, *Damiani, J.*,
subsequently was issued, charging the petitioner with

[5] As the Appellate Court explained, "[t]he ultimate task of the investigatory
grand jury is to make a finding to the court; it cannot indict. . . . '[I]nvesti-
gating grand juries neither try nor condemn nor accuse; they only inquire
and report.' *In re Investigation of the Grand Juror*, 188 Conn. 601, 605, 452
A.2d 935 (1982). 'The inquiry . . . is made by an independent judicial officer
and is investigatory and nonadjudicative. An inquiry is conducted and a
report is made to the court. The inquiry has no other purpose or function
. . . .' *State* v. *Moynahan*, 164 Conn. 560, 566, 325 A.2d 199, cert. denied,
414 U.S. 976, 94 S. Ct. 291, 38 L. Ed. 2d 219 (1973)." *In re Judicial Inquiry
No. 2005-02*, 104 Conn. App. 398, 400 n.2, 934 A.2d 248 (2007).

manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and assault in the first degree in violation of General Statutes § 53a-59 (a) (5). The petitioner was arrested on June 22, 2006.

"On June 14, 2007, the state filed with the panel a request for disclosure of 'a copy of the application for the appointment of a grand [jury] filed by [Connelly] and a copy of the order issued by the [panel] appointing the [investigatory grand jury].' That filing concluded that 'it is requested that for the purpose of full and fair discovery, such material be ordered unsealed for viewing by [the] office [of the state's attorney] and [by] the [petitioner].' In denying that request, the . . . panel stated: '[The] request for disclosure is denied, pursuant to § 54-47e, which specifically requires that any application filed with the panel and any order authorizing the investigation "shall be sealed." ' " *In re Judicial Inquiry No. 2005-02*, 104 Conn. App. 398, 400–401, 934 A.2d 248 (2007).

The petitioner, who sought to challenge the panel's decision, filed a petition for review with the Appellate Court, which the Appellate Court granted.[6] The Appellate Court determined that the requested documents, i.e., the application and order, are part of the "record" under § 54-47g; id., 406; and thus concluded that the panel was statutorily required to conduct a hearing on the request for disclosure of these documents in order to determine whether such disclosure is in the public interest. Id., 415–16. The Appellate Court's conclusion was based primarily on dictionary definitions of the word "record," as well as an unrelated reference in Practice Book § 61-10 to the scope of the phrase "adequate record for review."[7] *In re Judicial Inquiry No.*

---

[6] This court thereafter granted the petitioner's motion to stay the ancillary criminal proceedings pending the outcome of any appeal.

[7] Practice Book § 61-10 provides in relevant part: "It is the responsibility of the appellant to provide an adequate record for review. . . . For purposes of this section, the term 'record' is not limited to its meaning pursuant to

*2005-02*, supra, 104 Conn. App. 404–405. The Appellate Court also placed weight on the fact that the panel was required to file the application and order with the grand jury once the grand jury was appointed. Id., 405. This certified appeal followed.[8]

I

As a threshold matter, we must address the issue of this court's jurisdiction to consider the panel's appeal. The petitioner argues that this court lacks jurisdiction to consider a petition for certification from a decision of the Appellate Court on a petition for review filed pursuant to § 54-47g (a). The petitioner claims that our decision in *State* v. *Ayala*, 222 Conn. 331, 610 A.2d 1162 (1992), supports this position. We conclude that *Ayala* is distinguishable from the present case and that the principles expressed in that case do not deprive this court of jurisdiction to consider this appeal.

Consideration of the petitioner's jurisdictional claims requires adherence to several well established principles. First among these principles is that "[a] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Soracco* v. *Williams Scotsman, Inc.*,

Section 63-4 (a) (2), but includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety."

[8] We granted the panel's petition for certification to appeal, limited to the following issues: (1) "Whether the Appellate Court properly determined that it had subject matter jurisdiction to consider a petition for review of a General Statutes § 54-47b (4) panel's denial of a request to disclose statutorily sealed documents"; (2) "[i]f so, whether the Appellate Court properly determined that the application to the panel . . . and the [panel's] order of an investigation into the commission of a crime, may be disclosed as a part of the grand jury's investigation"; and (3) "[i]f so, whether the 'public interest' that the Appellate Court directed the panel . . . to evaluate on remand refers to the policy interest in grand jury privacy or the policy interest in public disclosure . . . ." *In re Judicial Inquiry No. 2005-02*, 285 Conn. 905, 943 A.2d 470 (2007).

292 Conn. 86, 91, 971 A.2d 1 (2009). "Subject matter jurisdiction is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong." (Internal quotation marks omitted.) *MBNA America Bank, N.A.* v. *Boata*, 283 Conn. 381, 389, 926 A.2d 1035 (2007). Although it is a critical prerequisite to any court's involvement in a case, we repeatedly have held that, when "a decision as to whether a court has subject matter jurisdiction is required, every presumption favoring jurisdiction should be indulged." *Demar* v. *Open Space & Conservation Commission*, 211 Conn. 416, 425, 559 A.2d 1103 (1989); see also *Seebeck* v. *State*, 246 Conn. 514, 533, 717 A.2d 1161 (1998) (noting "the long recognized presumption in favor of appellate jurisdiction"). With these principles in mind, we examine our decision in *Ayala*.

In *Ayala*, the defendant, Enrique Ayala, filed a petition for review with the Appellate Court pursuant to General Statutes § 54-63g,[9] challenging the trial court's revocation of his bail. See *State* v. *Ayala*, supra, 222 Conn. 334. Critical to our conclusion that this court lacked jurisdiction to consider the merits of Ayala's appeal was our determination that, "[i]n th[at] case, the Appellate Court did not undertake finally to determine *an appeal*. Instead, in accordance with § 54-63g, the Appellate Court granted [Ayala's] petition for review of the revocation of his bail but denied the relief that he had requested. That decision was neither the determination of 'an appeal' nor action that constituted a final judgment."[10] (Emphasis added.) Id., 338–39. We further

---

[9] General Statutes § 54-63g provides: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, may petition the Appellate Court for review of such order. Any such petition shall have precedence over any other matter before said Appellate Court and any hearing shall be heard expeditiously with reasonable notice."

[10] General Statutes § 51-197a provides in relevant part: "(a) Appeals from final judgments or actions of the Superior Court shall be taken to the Appellate Court in accordance with section 51-197c . . . except as otherwise provided by statute. . . ." Thus, to constitute "an appeal" to the Appel-

noted that "[t]he legislature . . . has the authority to make interlocutory orders immediately reviewable, in summary fashion, by authorizing petitions for review, usually within a limited time period, and often specifically to the Appellate Court." Id., 340. Thus, our conclusion in *Ayala* that we lacked jurisdiction[11] apparently was based on two subsidiary determinations, namely, that (1) the Appellate Court had not finally determined an appeal and that, (2) because the trial court's revocation of Ayala's bail was an interlocutory order, the petition for review was not an "appeal" to the Appellate Court for purposes of General Statutes § 51-197f.[12] See id., 338–39. We now conclude, however, that the former determination was incorrect.[13]

Although it is true that, "[i]n a criminal proceeding, there is no final judgment until the imposition of a sentence"; id., 339; the fact that there remained an unresolved, underlying criminal case in *Ayala* is not determinative of whether the *Appellate Court's* decision to uphold the trial court's revocation of bail was a "final

---

late Court under this statute, the order being challenged must represent a final judgment.

[11] This court ultimately exercised jurisdiction over the appeal in *Ayala* pursuant to General Statutes § 52-265a (a), "which allows the chief justice to certify a direct appeal to the Supreme Court from an interlocutory order of the Superior Court on an issue of law that involves a matter of substantial public interest and in which delay may work a substantial injustice." (Internal quotation marks omitted.) *State* v. *Ayala*, supra, 222 Conn. 341.

[12] General Statutes § 51-197f authorizes certified appeals to this court "[u]pon final determination of any appeal by the Appellate Court . . . ."

[13] Indeed, it is not unreasonable to characterize the court's statement in *State* v. *Ayala*, supra, 222 Conn. 339, that the Appellate Court's decision was not "action that constituted a final judgment" as dictum. The remainder of the court's jurisdictional analysis focused on the interlocutory nature of the trial court's bail revocation order, and the apparent basis for its determination that it lacked jurisdiction under § 51-197f to consider the appeal was that the limited petition for review authorized by § 54-63g did not constitute an "appeal" to the Appellate Court. See id., 339–40. Thus, because this court's statement in *Ayala* that the Appellate Court's decision was not action that constituted a final judgment arguably was "unnecessary to the resolution of [that] case"; *State* v. *Haight*, 279 Conn. 546, 557, 903 A.2d 217 (2006); we could consider it to be dictum of limited precedential value.

determination" of the petition for review for purposes of § 51-197f. The authors of one prominent treatise on Connecticut appellate procedure, in commenting on the distinction between the final judgment rule and the requirement of a "final determination" under § 51-197f, have noted that, "the final determination of an appeal rule looks at the finality of the appeal, not at the finality of the underlying judgment. Thus, even though a remand by the Appellate Court may vitiate the finality of the trial court's judgment, the appeal to the Appellate Court has been finally determined because that court has completed its work. As stated by the Supreme Court in the context of the finality of a Superior Court remand in an administrative appeal: Nothing further remained to be decided by the court. The appeal was terminated. The issues which it presented were all resolved." (Internal quotation marks omitted.) C. Tait & E. Prescott, Connecticut Appellate Procedure (3d Ed. 2000) § 7.2, pp. 265–66, quoting *Watson* v. *Howard,* 138 Conn. 464, 468, 86 A.2d 67 (1952).

We agree with the foregoing formulation and believe that our case law supports this understanding of what constitutes a "final determination" of the Appellate Court. For instance, in *Gold* v. *East Haddam,* 290 Conn. 668, 966 A.2d 684 (2009), we recently held that the Appellate Court's reversal of the trial court's summary judgment was, indeed, a final determination over which this court could exercise jurisdiction pursuant to § 51-197f even though "the judgment of the Appellate Court amounted to a denial of the motion for summary judgment and put [the] case in the same procedural posture that it would have been in if the trial court had denied the defendant's motion for summary judgment . . . ." Id., 676.[14] The procedural circumstances present in

---

[14] On the other hand, in *State* v. *Ellis,* 224 Conn. 711, 721, 621 A.2d 250 (1993), we concluded that this court lacked jurisdiction under § 51-197f to consider the defendant's motion for review of the Appellate Court's decision to strike an issue from his brief because that decision was not a "final judgment" of that court within the meaning of the statute. In *Ellis,* it was

*Ayala* are similar to those that were present in *Gold.* In *Ayala,* the Appellate Court granted the petition for review, considered it on the merits and denied the relief requested therein. *State* v. *Ayala,* supra, 222 Conn. 334. Nothing further remained for the Appellate Court to do.

We conclude that a final determination exists, for purposes of exercising our jurisdiction under § 51-197f, once the Appellate Court conclusively resolves the issue or issues before it and disposes of the cause such that no further action is necessary on *its* part. In other words, the critical factor in determining whether this court has jurisdiction is whether the decision of the *Appellate Court* represents a final determination. In order for jurisdiction to lie with this court, the statute merely requires that there be a "final determination of any appeal by the Appellate Court . . . ." General Statutes § 51-197f. Thus, the sole proper basis for our decision in *Ayala* was our determination that the petition for review was not an appeal, due to the interlocutory nature of the trial court's action, and the specific and limited nature of the petition for review authorized by § 54-63g.[15] Although the Appellate Court's judgment in

clear that the Appellate Court had not conclusively resolved the merits of the defendant's appeal but, rather, had simply struck an issue from a party's brief.

[15] We recognize that some of the more expansive language in *Ayala,* when taken out of context, may leave the impression that the mere invocation of the term "petition for review" automatically deprives this court of jurisdiction to review a decision of the Appellate Court. See, e.g., *State* v. *Ayala,* supra, 222 Conn. 340 ("[s]tatutory permission to file a petition for review does not authorize the filing of a full-fledged appeal, either in the Appellate Court or in this court"). We take this opportunity to clarify that it is not the terminology used to describe the mechanism by which a party may gain access to appellate review that determines this court's jurisdiction under § 51-197f but, rather, whether the issue is one that is properly characterized as an "appeal" that has been determined conclusively by the Appellate Court. It may be that, in most cases, a petition for review, particularly of an interlocutory order, may fail the test of § 51-197f. But it will not fail that test merely because the legislature uses the phrase "petition for review." Thus, although *Ayala* does not provide a bright line rule apart from its own context, we do not suggest that the principle on which it was based is invalid.

*Ayala* may have represented a final determination of that court for purposes of § 51-197f, there was no "appeal" to the Appellate Court within the meaning of § 51-197f because the underlying Superior Court order was interlocutory, and, therefore, no appeal was statutorily authorized.

With this background in mind, we have no difficulty concluding that, in the present case, the petition for review of the panel's determination that it had no statutory authorization to disclose the application and order was tantamount to an "appeal" within the meaning of § 51-197f.[16] The operative statute, namely, General Statutes § 54-47g (a), provides that "[a]ny person aggrieved by an order of the panel shall have *the right to appeal* such order by filing a petition for review with the Appellate Court . . . ." (Emphasis added.) The use of the term "appeal" in § 54-47g (a), in contrast to the language used in the bail revocation statute at issue in *Ayala*,[17]

---

We further recognize that we stated in *Ayala* that, "[w]ith respect to the petition for review authorized in [that] case by § 54-63g, as with regard to [General Statutes] §§ 51-164x and 54-47g (a), the legislature has designated the Appellate Court, and not this court, as the appropriate forum for the disposition of such petitions." Id., 340. We view this statement as pure dictum, as the specific review authorized by § 54-47g (a), and that statute's relationship to § 51-197f, clearly were not before the court in *Ayala*. We further clarify that, under the circumstances of the present case, the petition for review authorized by § 54-47g and decided by the Appellate Court *is*, in fact, a final determination of an appeal. Thus, our exercise of jurisdiction upon the granting of certification to appeal under § 51-197f was proper in the present case.

[16] Although, in the present case, we granted the petitioner's motion to stay the criminal proceedings brought against him as a result of the grand jury's finding of probable cause; see footnote 6 of this opinion; we note that disclosure may be sought under § 54-47g even if the grand jury investigation fails to uncover probable cause of criminal conduct or if there is no criminal case pending at the time of the request for disclosure. See General Statutes § 54-47g (a).

[17] The statute at issue in *Ayala*, namely, General Statutes § 54-63g, provides in relevant part: "Any accused person or the state, aggrieved by an order of the Superior Court concerning release, *may petition* the Appellate Court *for review* of such order. . . ." (Emphasis added.)

is a strong indication that the legislature did not intend for the Appellate Court to be the court of last resort with respect to the review of grand jury panel orders.[18] See *Asylum Hill Problem Solving Revitalization Assn. v. King*, 277 Conn. 238, 256, 890 A.2d 522 (2006) (when "a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed").[19]

Furthermore, it is clear that the Appellate Court's directive that the panel hold a hearing to determine whether disclosure of the application and order is in the public interest represents a final determination of that court. The issues that were presented to the Appel-

---

[18] This point is highlighted by the inclusion in General Statutes § 54-63g of the mandate that "[a]ny such petition [for review] shall have precedence over any other matter before [the] Appellate Court and any hearing shall be heard expeditiously with reasonable notice." Section 54-47g (a) contains no such expedited procedure for challenging orders of the grand jury panel.

[19] We also note that the prudential concerns underlying our decision in *Ayala* are absent in the present case. First, the panel's decision is not an interlocutory order, the appeal of which necessarily hinders the progress of an underlying criminal proceeding. Thus, the policy of judicial efficiency is not implicated in the present case, as it is in the bail revocation context of *Ayala* or in other cases involving petitions for review of interlocutory orders. See, e.g., *Waterbury Teachers Assn.* v. *Freedom of Information Commission*, 230 Conn. 441, 450, 645 A.2d 978 (1994) ("[o]ur concern for the efficient operation of the judicial system . . . is the practical consideration behind the policy against piecemeal litigation inherent in the final judgment rule" [internal quotation marks omitted]); *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983) ("the delays and disruptions attendant upon intermediate appeal, which the [final judgment] rule is designed to avoid, are especially inimical to the effective and fair administration of the criminal law" [internal quotation marks omitted]). Furthermore, because of the significant liberty interest implicated in the context of a bail revocation order, General Statutes § 54-63g expressly requires that "[a]ny such petition [for review] shall have precedence over any other matter before [the] Appellate Court and any hearing shall be heard expeditiously with reasonable notice." This expedited review procedure is critical in light of the importance of the interest at stake. No such interest is present in the present case, and, accordingly, § 54-47g (a) contains no such expedited procedure for challenging orders of the grand jury panel.

late Court were all conclusively resolved. We conclude, therefore, that the decision of the Appellate Court was a final determination of an appeal and, as such, was the proper subject of a petition for certification to appeal to this court pursuant to § 51-197f.

II

We now turn to the panel's claim that the Appellate Court lacked subject matter jurisdiction to consider the petitioner's petition for review of the panel's denial of his request to disclose the documents sealed pursuant to § 54-47e. The panel claims that the grand jury statutes do not provide for appellate review of its nondiscretionary sealing of the application and order, thus depriving the Appellate Court of jurisdiction over the petition for review. The panel also argues that, because § 54-47e does not vest it with discretion to disclose the application and order, the petitioner's appeal does not present a justiciable controversy. Finally, the panel claims that the Appellate Court lacked jurisdiction because the petitioner cannot challenge the empanelment of the grand jury and thus cannot obtain any practical relief by disclosure of the application and order. The petitioner, on the other hand, contends that the Appellate Court has exclusive jurisdiction over his petition for review of the panel's denial of his request for disclosure of the application and order. He argues that the Appellate Court properly concluded that the application and order are part of the record of the investigation and that that court had jurisdiction to consider his petition for review pursuant to § 54-47g.

We conclude that the Appellate Court properly exercised jurisdiction over the petition for review. The subject matter jurisdiction of the Appellate Court is governed by statute. See, e.g., *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 652, 954 A.2d 816 (2008); *State* v. *Curcio*, 191 Conn. 27, 30, 463 A.2d 566 (1983).

Pursuant to General Statutes § 54-47g (a), "[a]ny person aggrieved by an order of the panel shall have the right to appeal such order by filing a petition for review with the Appellate Court . . . ." Although we ultimately disagree with the Appellate Court's interpretation of the statutory scheme and conclude that the petitioner is not entitled to disclosure of the application and order, we believe that a colorable claim of aggrievement is sufficient to satisfy the review provision of § 54-47g (a) and vest the Appellate Court with jurisdiction to consider the merits of the petition for review. See *In re Shaquanna M.*, 61 Conn. App. 592, 598, 767 A.2d 155 (2001) ("[a]n individual establishes classical aggrievement if there is a *possibility*, not necessarily a certainty, that a legally protected interest is adversely affected" [emphasis added]). The state filed a request for disclosure with the panel in accordance with the procedure set forth in § 54-47g (a), which the panel denied. The state had filed this request in response to the petitioner's request that the state disclose a copy of the application and order in the course of discovery in the petitioner's criminal case. The panel's denial of the request for disclosure caused the petitioner to be sufficiently aggrieved so as to allow the Appellate Court to exercise jurisdiction over the petition for review, regardless of its ultimate decision on the merits. Thus, we proceed to consider whether the Appellate Court correctly construed the grand jury statutes.

## III

## A

## Standard of Review

Resolving this case requires us to interpret the grand jury statutes, a task that is subject to our plenary review. See, e.g., *Dept. of Transportation* v. *White Oak Corp.*, 287 Conn. 1, 7, 946 A.2d 1219 (2008). Through our established approach to statutory construction, we strive "to

ascertain and give effect to the apparent intent of the legislature." *Friezo* v. *Friezo*, 281 Conn. 166, 181, 914 A.2d 533 (2007). General Statutes § 1-2z governs our statutory analysis, directing us first to examine the text of the statute we seek to construe and to consider its relationship to related statutes. If this inquiry reveals a plain and unambiguous meaning that does not yield absurd or unworkable results, our inquiry is at an end. General Statutes § 1-2z. If this approach does not reveal a plain and unambiguous meaning or does yield absurd or unworkable results, then our resort to extratextual sources is warranted so that we may arrive at an interpretation of the statutory language most consistent with the legislature's intent. See General Statutes § 1-2z. We are further guided in this inquiry by the presumption that the legislature, in amending or enacting statutes, "always [is] presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *In re William D.*, 284 Conn. 305, 313, 933 A.2d 1147 (2007).

B

Textual Analysis of Statutory Scheme

To determine whether the Appellate Court properly disposed of the petitioner's appeal, we first must determine whether the meaning of the term "record of the investigation" set forth in § 54-47g encompasses the "order" and "application" referred to in § 54-47e. We begin by noting that neither the term "record of the investigation" nor the more general term "record" is defined in § 54-47b.[20] We begin our analysis by focusing

---

[20] We note that, at first blush, the specific term "record of the investigation," which is used in §§ 54-47d, 54-47e and 54-47g, appears to be more limited and less inclusive than the more general term "record," on which the Appellate Court's analysis focused. See *In re Judicial Inquiry No. 2005-02*, supra, 104 Conn. App. 404–405 (defining term "record" and concluding that "the term generally has an expansive meaning"). As a matter of common sense, the phrase "record of the investigation" seemingly connotes only such transcripts and other evidence gathered *as a result of* the grand jury investigation, and thus would not include within its purview the order and

on § 54-47e.[21] This statute, more than any other in the grand jury statutes, illustrates the carefully drawn distinctions among the key terms. There are essentially three main parts to § 54-47e, all contained within a single paragraph. The first part expressly declares that the application and order "shall be sealed" by the panel. General Statutes § 54-47e. Next, the statute directs the panel to submit, among other things, a summary of the scope of the investigation, which "shall be public unless the panel determines, by majority vote, that such summary be sealed . . . ." General Statutes § 54-47e. The final part provides that "[a]ny investigation by the investigatory grand jury shall be conducted in private, provided the panel, by a majority vote, may order the investigation or any portion thereof to be public when such disclosure or order is deemed by the panel to be in the public interest." General Statutes § 54-47e. Thus, the legislature clearly distinguished the "application" and "order," on the one hand, from the "finding and record of the investigation," on the other. By sealing the application and order, and making the summary public, § 54-47e strikes an explicit and careful balance

application. Thus, we believe the Appellate Court's emphasis on the term "record" is misplaced and of limited value in answering the question before us.

[21] General Statutes § 54-47e provides: "Any order authorizing the investigation into the commission of a crime or crimes and any application filed with the panel pursuant to section 54-47c or subsection (c) of section 54-47d shall be sealed. The panel shall submit to the Chief Court Administrator a summary of the scope of the investigation, any recommendation as to the court location at which any motions to quash and any contempt proceedings are to be heard and the finding and record of the investigation are to be filed. Such summary shall be public unless the panel determines, by majority vote, that such summary be sealed for purposes of (1) ensuring the public safety of any individual, (2) ensuring that the investigation would not be adversely affected or (3) complying with other provisions of the general statutes or rules of court which prohibit disclosure of such information. Any investigation by the investigatory grand jury shall be conducted in private, provided the panel, by a majority vote, may order the investigation or any portion thereof to be public when such disclosure or order is deemed by the panel to be in the public interest."

between the need for confidentiality in the grand jury process and the public's right to scrutinize the endeavors of state law enforcement officials.

The juxtaposition of the three parts of § 54-47e is instructive. Unlike the summary and investigation itself, the provision requiring the sealing of the application and order does not contain any exception allowing disclosure of these documents, nor does it contain any standard that would serve to guide such a decision. This fact suggests that the sealing of the application and order is absolute. Moreover, we fail to discern the purpose of the separate summary of the scope of the investigation, which is presumptively public, if in fact the legislature intended that the application and order could be publicly disclosed at the discretion of either the panel or the grand jury, or by the request of a third party pursuant to the disclosure provisions of § 54-47g.

In light of the foregoing, the existence of the final portion of § 54-47e, which allows the panel to open the entire investigation to the public from the outset, also strongly indicates that the grand jury statutes consistently treat the application and order as distinct from the investigation itself. Under § 54-47e, the investigation itself is presumptively private from its inception, and the panel must determine that opening any part of the ongoing investigation to the public is in the public interest for that presumption to be overcome. It is revealing that the application and order are specifically and expressly exempted from the panel's discretion to disclose under the public interest exception. It appears that the presumptively public summary of the scope of the investigation was intended as a compromise, mitigating any consequences of the mandatory sealing of the application and order.

A review of the other relevant provisions in the grand jury statutes that address the key terms also demon-

strates that the legislature intended to treat the application and order as separate and distinct from the actual conduct of the "investigation" and any record thereof. This consistent approach supports the panel's claim that the disclosure provisions in § 54-47g relating to the "record of the investigation" could not have been intended to apply to the application and order. Indeed, at each stage of the process, the application and order are treated as distinct from the investigation itself. For instance, General Statutes § 54-47c sets forth, in detail, the procedure that must be followed to apply for an investigatory grand jury.[22] Next, General Statutes § 54-

[22] General Statutes § 54-47c provides in relevant part: "(a) Any judge of the Superior Court, Appellate Court or Supreme Court, the Chief State's Attorney or a state's attorney may make application to a panel of judges for an investigation into the commission of a crime or crimes whenever such applicant has reasonable belief that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed.

"(b) Each application for an investigation into the commission of a crime or crimes shall be made in writing upon oath or affirmation to a panel of judges. Each application shall include the following information: (1) The identity of the applicant and his authority to make such application; (2) a full and complete statement of the facts and circumstances relied upon by the applicant to justify his reasonable belief that the investigation will lead to a finding of probable cause that a crime or crimes have been committed; and (3) a full and complete statement of the facts concerning all previous applications known to the applicant, made to any panel of judges, for investigation of any one or more of the same criminal offenses involving any of the same persons specified in the application, including the action taken by the panel on each such application. . . .

"(c) If the application is made by the Chief State's Attorney or a state's attorney, it shall also include (1) a full and complete statement of the status of the investigation and of the evidence collected as of the date of such application, (2) if other normal investigative procedures have been tried with respect to the alleged crime, a full and complete statement specifying the other normal investigative procedures that have been tried and the reasons such procedures have failed or the specific nature of the alleged crime or the nature of the investigation that leads the applicant to reasonably conclude that the use of normal investigative procedures would not result in the obtaining of information that would advance the investigation or would fail to secure and preserve evidence or testimony that might otherwise be compromised, (3) if other normal investigative procedures have not been tried, a full and complete statement of the reasons such procedures

47d (a) provides: "*If* the panel approves the application and orders an investigation into the commission of a crime or crimes, the Chief Court Administrator shall (1) appoint an investigatory grand jury to conduct the investigation, and (2) designate the court location in the judicial district where . . . any findings and records of the investigation shall be filed." (Emphasis added.) This language clearly indicates that a "[record] of the investigation" exists *only if* the application is approved and an investigation ordered. General Statutes § 54-47d (a); see also General Statutes § 54-47c (d) ("[t]he panel *may* approve the application and order an investigation" [emphasis added]).

In fact, in the statutes dealing with the application for, and appointment of, an investigatory grand jury, the phrase "record of the investigation" or "records of the investigation" always is used conditionally and discussed in the future tense. For instance, General Statutes § 54-47d (a) provides that, *in the event* that an

reasonably appear to be unlikely to succeed if tried or be too dangerous to employ, and (4) a full and complete statement of the reasons for the applicant's belief that the appointment of an investigatory grand jury and the investigative procedures employed by such investigatory grand jury will lead to a finding of probable cause that a crime or crimes have been committed.

"(d) The panel may approve the application and order an investigation into the commission of a crime or crimes if it finds that (1) the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed, (2) if the application was made by the Chief State's Attorney or a state's attorney, other normal investigative procedures with respect to the alleged crime have been tried and have failed or reasonably appear to be unlikely to succeed if tried or be too dangerous to employ or, due to the specific nature of the alleged crime or the nature of the investigation, it is reasonable to conclude that the use of normal investigative procedures would not result in the obtaining of information that would advance the investigation or would fail to secure and preserve evidence or testimony that might otherwise be compromised, and (3) the investigative procedures employed by an investigatory grand jury appear likely to succeed in determining whether or not there is probable cause to believe that a crime or crimes have been committed."

application is approved, the chief court administrator shall designate the court in which "any . . . records of the investigation shall be filed." General Statutes § 54-47e similarly directs the panel to provide a recommendation about where the "record of the investigation" is to be filed. This language can be read sensibly only when it includes the implicit caveat, "once the investigation is completed." Importantly, General Statutes § 54-47e mandates that "any application filed with the panel . . . shall be sealed" without regard to the ultimate disposition of such application. It is difficult to fathom how an *unapproved* application can be considered a part of the record of an investigation that is never conducted, and there is no provision in the grand jury statutes providing for the public disclosure of any preliminary documents if the panel ultimately decides *not* to order an investigation.

On the other hand, the two grand jury statutes that directly concern the conduct and conclusion of the grand jury's investigation, namely, General Statutes §§ 54-47f and 54-47g, refer to the record of the investigation as if it were created contemporaneously with the investigation itself. First, General Statutes § 54-47f (g) provides: "An official stenographer of the Superior Court or his assistant shall *record* any testimony taken at *the investigation*." (Emphasis added.) General Statutes § 54-47g (a) further directs that "[t]he stenographer shall file any *record of the investigation* with the [designated] court . . . ."[23] (Emphasis added.) It is unlikely that the stenographer would have access to the sealed order and application during the normal course of performing his ministerial duties, or that his duties would

---

[23] The use of the term "any" suggests that the stenographer is responsible for filing more than the transcripts of the testimony that he previously has recorded. We assume, without deciding, that the stenographer also is responsible for filing any exhibits that have been compiled as part of the investigation.

require the filing of such documents. Moreover, General Statutes § 54-47g (b) provides that "[t]he finding [of the investigation] may include all or such part of the record as the investigatory grand jury may determine" and that "[t]he finding of the investigation shall be open to public inspection and copying" unless the chief state's attorney or a state's attorney files a timely objection with the grand jury. It seems incongruous with the grand jury statutes as a whole that the application and order, sealed by the panel from the outset by statutory directive, could be made public at the discretion of the grand jury and without input from the panel merely by virtue of their inclusion in the finding.

Indeed, this highlights a flaw in the Appellate Court's reasoning. The Appellate Court first concluded that "the application and order transmitted by the panel pursuant to § 54-47d (b) are part of the record of the investigatory grand jury." *In re Judicial Inquiry No. 2005-02*, supra, 104 Conn. App. 406. The Appellate Court subsequently declared "that the application for the investigatory grand jury and the panel's order thereon *must be sealed at the outset of the investigation and remain so unless*, following the conclusion of the investigation and the filing of the finding and record of the investigatory grand jury, *a majority of the panel deem[s] their disclosure to be in the public interest*." (Emphasis added.) Id., 413. These conclusions are clearly inconsistent. If the application and order are included in the record of the investigation, then they may be disclosed "as the investigatory grand jury may determine," without the panel's approval. General Statutes § 54-47g (b). If, on the other hand, the application and order are *not* within the scope of the record of the investigation, they cannot be disclosed at the grand jury's discretion, as subsections (a)[24] and (d)[25] of § 54-47g provide only a means

[24] See footnote 4 of this opinion for the relevant text of subsection (a) of § 54-47g.

[25] General Statutes § 54-47g (d) provides: "Any person aggrieved by an order of the investigatory grand jury shall have the right to appeal such

for requesting that a part of the record of the investigation be unsealed. Thus, contrary to the Appellate Court's conclusion, the application and order cannot be a part of the record of the investigation and simultaneously "be sealed at the outset of the investigation and remain so unless . . . a majority of the panel deem[s] their disclosure to be in the public interest." *In re Judicial Inquiry No. 2005-02*, supra, 413.

Finally, we note that the grand jury statutes include two separate sealing directives, which would make little sense unless the legislature intended the application and order to be treated differently from the record produced as a result of the grand jury's investigation. As we previously discussed, General Statutes § 54-47e provides in relevant part that the application and order "shall be sealed. . . ." The grand jury statutes do not thereafter expressly provide for the possibility of unsealing or disclosing the application and order. General Statutes § 54-47g (b) provides in relevant part that "[t]he finding of the investigation shall be open to public inspection . . . [and it] may include all or such part of the record as the investigatory grand jury may determine . . . ." General Statutes § 54-47g (a) provides in relevant part that "any part of the record of the investigation not disclosed with the finding pursuant to subsection (b) of this section *shall be sealed*, provided any person may file an application with the panel for disclosure of any such part of the record. . . ." (Emphasis added.) It is unclear why, if the application and order are part of the record of the investigation, there is a need for those documents to be sealed under § 54-47e, and then sealed again under § 54-47g (a), assuming they are not disclosed by the grand jury with its finding. This apparent duplication further bolsters our under-

order by filing a petition for review with the Appellate Court within seventy-two hours from issuance of such order."

standing that the application and order are distinct from the record of the investigation.

Despite this strong structural and textual evidence in support of a restrictive construction of the term "record of the investigation," there is one element of the statutory scheme that the Appellate Court found to be particularly troubling. General Statutes § 54-47d (b) provides in relevant part that, at the time the grand jury is appointed, "[t]he panel shall retain a copy of the order and the original application and shall transmit to the investigatory grand jury, appointed pursuant to subsection (a) of this section, the original order and a copy of the application filed with the panel." The Appellate Court found this to be persuasive evidence for its conclusion that "[these] materials constitute part of the record of the investigatory grand jury."[26] *In re Judicial Inquiry No. 2005-02*, supra, 104 Conn. App. 405. The petitioner also relies heavily on this reasoning, arguing that, "[o]nce transmitted, the order and the application necessarily, and as a matter of common sense, become part of the documents contained in the file of the clerk of the court [where] the grand jury investigation has been assigned."[27] Although we are not persuaded that such a formulation is in any way necessary or "a matter of common sense," we do agree that there is more than

---

[26] We note that it is not the record of the grand jury to which the statutes refer but, rather, the "record of the *investigation*."

[27] The petitioner's brief continues: "These documents [namely, the application and order], therefore, become part of the record, as that term is used, of the investigatory grand jury. Further, upon the completion of the grand jury investigation the stenographer is required by . . . § 54-47g (a) to file 'any record of the investigation' with the court. The application and order clearly fall within that description." Apart from our observation that the petitioner assumes a critical conclusion when he declares that the application and order "become part of the record, *as that term is used*"; (emphasis added); we also note that the petitioner's argument does not explain how the stenographer, whose duty it is to file the record of the investigation, ever comes into possession of the application and order.

one reasonable manner in which this specific language of § 54-47d (b) may be read.

Once appointed, the grand jury receives the panel's original order and a copy of the application. In our view, this fact does not *necessarily* imply that these items become a part of the record of the yet to be conducted investigation, as the petitioner asserts. The petitioner's position, however, is not an entirely unreasonable interpretation of the effect of § 54-47d (b) on the status of the application and order. Because we conclude that it is unclear, at this point in the grand jury process, how the legislature intended for the application and order to be treated, we believe that an examination of relevant extratextual evidence is appropriate to clarify our understanding of the key statutory terms.

C

Legislative History

We proceed, therefore, to consider any legislative history that might reveal how the legislature intended these terms to be interpreted. The petitioner, quoting *In re Judicial Inquiry No. 2005-02,* supra, 104 Conn. App. 405 n.6, declares that "the Appellate Court was correct when it stated that the 'legislative history of the [grand jury statutes] sheds no light on whether the term "record," as it is used therein, encompasses the application for the investigatory grand jury and the panel's order thereon.' " The state, in its brief to this court, expresses a similar sentiment, declaring that the legislative history is, "at best, inconclusive." The panel, on the other hand, relies heavily on the legislative history in support of the interpretation of the statutes that it advances. In our view, the extensive recorded discussions and debates surrounding the enactment of the grand jury statutes in 1985, as well as their evolution through subsequent amendments in 1987 and 1988, are particularly illuminating.

As the Appellate Court noted, the investigatory grand jury "is entirely a creature of statute." *In re Judicial Inquiry No. 2005-02*, supra, 104 Conn. App. 408, citing *Connelly* v. *Doe*, 213 Conn. 66, 70, 566 A.2d 426 (1989). This creature was born of a single statute in 1941, which provided simply that "the superior court in any county" had the authority to order an investigation "to determine whether or not there is probable cause to believe that a crime or crimes have been committed within the county . . . ." General Statutes (Cum. Sup. 1941) § 889f. Such an inquiry could be initiated whenever the court believed that the "due administration of justice" so required. General Statutes (Cum. Sup. 1941) § 889f. The investigation was to be conducted "before any judge of said court or a state referee" and was to be "public or private as said court shall order." General Statutes (Cum. Sup. 1941) § 889f. "At the conclusion of [the] inquiry the judge or referee conducting the same shall file with the court a report and the court shall direct whether, and to what extent, such report shall be made available to the public or interested parties; and any transcript of testimony taken at such inquiry shall likewise be filed with the court and it shall have the same powers with reference to it as it has with reference to the report . . . ." General Statutes (Cum. Sup. 1941) § 889f. There was no mechanism provided in the statute for making a disclosure request, no standard that guided the court's discretion over such disclosure, and no provision for a hearing on such a request or for appellate review of the decision regarding disclosure of any documents pertaining to the inquiry.

Seeing a need to reform this process, the legislature, with significant input from the judicial branch and the chief state's attorney, substantially rewrote the statute in 1985, giving rise to the investigatory grand jury statutory scheme in its modern form. See generally Public Acts 1985, No. 85-611 (P.A. 85-611). Public Act 85-611

substantially altered the procedures governing the investigatory grand jury system in Connecticut. The new procedures interposed a panel of three Superior Court judges between the official seeking a grand jury investigation and the commencement of such an investigation. The party seeking to instigate a grand jury investigation was required by the new statute to make a detailed application to the panel "whenever such applicant has reasonable belief that the administration of justice requires an investigation to determine whether or not there is probable cause to believe that a crime or crimes have been committed." P.A. 85-611, § 2, codified at General Statutes § 54-47c (a).

If the panel approved the application, it was to issue an order authorizing an investigation, at which point the chief court administrator would appoint the investigatory grand jury. P.A. 85-611, § 3, codified at General Statutes § 54-47d (a). Public Act 85-611 contained a detailed description of what had to be specified in the panel's order, including "the scope of the investigation" and the panel's "reasons for finding that the administration of justice requires an investigation . . . ." P.A. 85-611, § 3, codified as amended at General Statutes § 54-47d (b). The original order and a copy of the application were to be transmitted to the investigatory grand jury appointed by the chief court administrator. P.A. 85-611, § 3, codified at General Statutes § 54-47d (b). Otherwise, P.A. 85-611 provided that any application filed with the panel and any order authorizing an investigation "*shall be sealed.*" (Emphasis added.) P.A. 85-611, § 4, codified at General Statutes § 54-47e. Public Act 85-611 further provided that "[a]ny investigation by the investigatory grand jury shall be conducted in private, provided the panel, by a majority vote, may disclose the fact that any matter has been referred for an investigation by a grand jury and may order the investigation or any portion thereof to be public when such disclosure or order

is deemed by the panel to be in the public interest." P.A. 85-611, § 4, codified as amended at General Statutes § 54-47e. Finally, P.A. 85-611 mandated that, once the investigation was complete, "the investigatory grand jury conducting such investigation shall file its finding, and the stenographer shall file any record of the investigation, with the court of the [designated] judicial district . . . . Such finding shall state whether or not there is probable cause to believe that a crime or crimes have been committed. The finding and record of the investigation *shall be sealed*, provided the panel, by a majority vote, may disclose such finding and record when such disclosure is deemed by the panel to be in the public interest." (Emphasis added.) P.A. 85-611, § 6, codified as amended at General Statutes § 54-47g (a).

Public Act 85-611 contained no provision for requesting public disclosure of the finding, no hearing before the panel on the request for such disclosure and no avenue of appellate review of the panel's decision on the request for disclosure. The finding was to include only a statement as to "whether or not there is probable cause to believe that a crime or crimes have been committed," and the grand jury was not afforded any discretion to disclose the finding or any part of the record of the investigation to the public. P.A. 85-611, § 6. In this context, it is revealing that the legislature nonetheless felt compelled to include two distinct sealing directives in P.A. 85-611. At the outset, the order and application were to be sealed, and no provision for their disclosure was included, yet the provision subsequent to that sealing directive authorized the panel to "disclose the fact that any matter has been referred for an investigation by a grand jury . . . ." P.A. 85-611, § 4. Public Act 85-611 also provided that, at the close of the investigation, the finding and record of the investigation were to be sealed, and the panel was given authority to disclose the finding and record of the investigation when it was

deemed to be in the public interest. P.A 85-611, § 6. The separate sealing directives make little sense if the record of the investigation includes the application and order, as it would be redundant to seal the same information twice. Moreover, in light of the legislature's demonstrated ability to provide a mechanism for disclosure, it is significant that no such mechanism was included for the application and order.

The testimony of several key witnesses before the judiciary committee offers insight into the legislators' understanding of the meaning of the critical statutory terms and offers further support for the panel's proffered interpretation of the grand jury statutes. The testimony of Judge Aaron Ment, the chief court administrator in 1985, who was actively involved in drafting the proposed legislation, is particularly helpful. Representative Joseph D. Nardini asked Judge Ment whether it would improve the openness and accountability of the grand jury process to make the release of the "records" mandatory whenever the "report" is publicly released. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1985 Sess., p. 939. The following colloquy occurred:

"Judge Ment: The report may be released independent and for other reasons than the records might be released. *When we talk about records we are talking about transcripts I assume*[?]

"[Representative] Nardini: Right.

"Judge Ment: The bill now indicates that one and or both may be released within the discretion of the judge as limited by the guidelines. It would appear to me that in some instances the report could very well be made public, but the testimony of specific witnesses may not be." Id.

C. Robert Satti, Sr., then the state's attorney for the judicial district of New London, also expressed an

understanding that the proposed legislation divided the grand jury process into distinct phases: "I am absolutely and definitely . . . opposed to [the] presumption of openness, in the initiation of a process and the conduct and the report." Id., p. 1038. Although Satti's terminology differs from the language eventually used in the statutes, it is apparent that he is objecting to the public disclosure of the order and application, or, in his words, the "initiation of a process," as well as the finding and record of the investigation or, in his words, the "report" and the "conduct . . . ." Id.

Satti was not the only individual who viewed the order and application as distinct from the record of the investigation. Indeed, Senator Richard B. Johnston proposed an amendment that would have provided far greater public disclosure, which ultimately was not adopted. Senator Johnston explained his proposal as follows: "The investigations under the investigatory grand jury proceedings would be public and all *applications, orders, reports and records* would all be public information unless a decision were made that it be closed for three delineated [reasons]." (Emphasis added.) 28 S. Proc., Pt. 16, 1985 Sess., p. 5376. Clearly, if the term "record" was intended to include the application and order, Senator Johnston's distinct enumeration of these various documents would have been unnecessary.

The legislature amended the grand jury statutes in 1987. See generally Public Acts 1987, No. 87-350 (P.A. 87-350). All of the changes relevant to this appeal are found in § 5 of P.A. 87-350. First, the legislature directed that the investigatory grand jury not only must file its finding with the court in the appropriate judicial district but also must "file a copy of its finding with the panel and with the Chief State's Attorney or a state's attorney if such Chief State's Attorney or state's attorney made application for the investigation." P.A. 87-350, § 5, codi-

fied at General Statutes § 54-47g (a). Public Act 87-350 then addressed the disposition of the record of the investigation: "The stenographer shall file any record of the investigation with the [designated] court . . . and the panel and the Chief State's Attorney or a state's attorney, if such Chief State's Attorney or state's attorney made application for the investigation, shall have access to such record upon request made to the clerk of the court without a hearing." P.A. 87-350, § 5, codified at General Statutes § 54-47g (a). This change was significant in that it granted the prosecuting authority access to the finding and record of the investigation, and removed any exercise of discretion by the panel with respect to the disclosure of these documents to the state officials who initiate the investigation. See *State v. Rivera*, 250 Conn. 188, 205, 736 A.2d 790 (1999).

The legislative history of P.A. 87-350 adds more support for the interpretation that the panel urges in the present case. One of the primary goals of P.A. 87-350 was to increase the availability of and ease of access to the finding and record of the investigation for state's attorneys involved in the grand jury investigation. See id. Commenting on the effect of such a change before the judiciary committee, John J. Kelly, then the chief state's attorney, stated: "[The amendment] would read . . . [that] the [c]hief [s]tate's [a]ttorney or [s]tate's [a]ttorney shall be provided within a reasonable time *the record of the testimony of all witnesses before the grand jury and the findings of the [g]rand [j]ury* . . . ." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1987 Sess., pp. 944–45. Clearly, it was Kelly's understanding of the amendment that the state's attorneys, in gaining access to the record of the investigation, were gaining access to transcripts of testimony obtained as a result of the investigation.

The remarks of Representative Jay B. Levin, who summarized the proposed legislation prior to its adop-

tion by the House of Representatives in 1987, make clear that the legislature understood that the legislation, in granting the state's attorneys access to the "record of the investigation," was referring to the transcripts and perhaps other evidence gathered by the grand jury during the course of its investigation: "[The proposed legislation] . . . makes clear what is presently unclear, that the [s]tate's [a]ttorney, if the [s]tate's [a]ttorney is the applicant for the grand jury investigation may receive copies of the transcripts and reports of that investigation." 30 H.R. Proc., Pt. 19, 1987 Sess., p. 6922.

Section 5 of P.A. 87-350 was substantively amended once again in 1988. See generally Public Acts 1988, No. 88-345 (P.A. 88-345). Public Act 88-345 provided an expanded right of access to interested individuals beyond those state officials directly involved in the investigation.[28] See P.A. 88-345, § 1, codified at General Statutes § 54-47g (a) and (b). In P.A. 88-345, § 1, the legislature added much of what is now § 54-47g. In addition to adding the provisions making the grand jury's finding presumptively public, P.A. 88-345, § 1, also

---

[28] The 1988 amendment provided in relevant part: "[A]ny part of the record of the investigation not disclosed with the finding . . . shall be sealed, provided any person may file an application with the panel for disclosure of any such part of the record. Upon receipt of such application, the panel shall, after notice, hold a hearing and the panel, by a majority vote, may disclose any such part of the record when such disclosure is deemed by the panel to be in the public interest . . . . Any person aggrieved by an order of the panel shall have the right to appeal such order by filing a petition for review with the Appellate Court within seventy-two hours from the issuance of such order." P.A. 88-345, § 1, codified at General Statutes § 54-47g (a).

The 1988 amendment also provided that "[t]he finding of the investigation shall be open to public inspection" unless the chief state's attorney or a state's attorney files an objection to such disclosure within seven days, and further provided that "[t]he finding may include all or such part of the record as the investigatory grand jury may determine . . . ." P.A. 88-345, § 1, codified at General Statutes § 54-47g (b).

The foregoing language has not been amended since P.A. 88-345 was enacted in 1988.

allowed the grand jury to include as much of the record in the finding as it deemed appropriate. See General Statutes § 54-47g (b). Public Act 88-345, § 1, also added the provision, which is particularly relevant in this case, that allows any person to file an application with the panel requesting disclosure of any part of the record not disclosed with the finding, and to file a petition with the Appellate Court for review of the panel's decision on such an application. See General Statutes § 54-47g (a).

Speaking in opposition of the proposed 1988 amendment before the judiciary committee, Chief State's Attorney Kelly made the following remarks: "Right now, findings and records are presumed to be private, are presumed to be secret.

"This would make them presumptively public. Please note the language is the finding and record. That means the file report issued by the [g]rand [jury]. *The record has to mean, it can only [be] read [to mean] all of the transcripts of testimony and exhibits.*" (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1988 Sess., p. 1380. Later in that same hearing, the following exchange took place between Kelly and Senator Howard T. Owens, Jr.:

"[Kelly]: . . . [T]he language is very clear. You speak of the 'finding and record of the grand jury'. That can only be interpreted to be the final report issued by the grand [jury].

"[Senator] Owens: And the transcripts[?]

"[Kelly]: And the transcripts of testimony and exhibits." Id., p. 1393.

Thus, Senator Owens, a key supporter of the 1988 amendment, and Kelly, who testified in opposition of the increased transparency engendered by it, each expressed his common understanding of the term "record" in § 54-47g (b) as referring only to transcripts

and exhibits produced in the course of the investigation itself. During Judge Ment's testimony on the same day, Senator Owens once again revealed his understanding that the 1988 amendment, in allowing the grand jury to disclose the record, or portions thereof, as part of its finding, was referring to the disclosure of the transcripts: "[A]s long as the transcripts are not provided as part of the statement that is issued or the report of the [g]rand [jury], there are ways that the [g]rand [jury] can obviously prepare [its] report . . . so that the rights of . . . the informants . . . can be protected."[29] Id., pp. 1336–37. Senator Owens expressed a similar sentiment in addressing the Senate during a floor debate in support of the amendment: "The finding may include all or such part of the *record* as the investigative grand jury may determine so that [it] may want to include *transcripts* with it, [it] may want to include *exhibits* with it or not include any of that at all in the finding." (Emphasis added.) 31 S. Proc., Pt. 7, 1988 Sess., p. 2244. Again, the repeated juxtaposition of the term "record" with the terms "transcripts" and "exhibits" in this context strongly suggests a legislative understanding of the term "record" that is narrower and more specific than that urged by the petitioner.

## D

### Public Policy

From a public policy perspective, the debates of the legislature reveal an underlying tension between the need for secrecy in order for grand jury investigations to be effective and sensitive to the concerns and safety of witnesses, on the one hand, and the desire for openness and transparency of the grand jury as an institu-

---

[29] The term "report" of the grand jury, referenced several times in the legislative history, read in context, is synonymous with the grand jury's "finding," as that term is used in the grand jury statutes.

tion, on the other.[30] In our view, however, these public policy concerns actually *favor* a construction of the grand jury statutes that excludes the order and application from the term "record of the investigation."

First, the sealing of the order and application ensures the protection and cooperation of witnesses who initiate complaints with the prosecuting authority only on the understanding *or condition that they will not be involved in the investigation or be required to testify before a grand jury.* Of course, the state's attorney who seeks to open a grand jury investigation on the basis of such a complaint likely would note the witness' identity and statement in the application; see General Statutes § 54-47c (b) and (c); and that information potentially could be made a part of the panel's order. See General Statutes § 54-47d (b). If the application and order are made public, the witness' safety could be placed in jeopardy. Satti, a former state's attorney, expressed this concern in testimony before the judiciary committee: "We are not trying to hide things, we are trying to do our job to carry out the prosecution of criminals. I think of the neighbor [who] wants to complain [about his] next door neighbor who is sexually assaulting his daughter, or [his] next door neighbor who is in fact using drugs and [whose] children are using drugs. But that neighbor never wants it known that he or she made that complaint because if [it were known]

---

[30] In *State* v. *Rivera*, supra, 250 Conn. 206, we noted that the "development of § 54-47g demonstrates that, over time, the legislature has provided for increased disclosure of grand jury proceedings and testimony. Recognizing the purposes behind the common-law presumption regarding the confidentiality and secrecy of grand jury proceedings, the statute favors disclosure after the grand jury has completed its investigation." Although the evolution of the grand jury statutes does indicate that the general trend has favored more disclosure, this liberalization has not been implemented without limitations, primarily because of legitimate concerns regarding the potentially highly sensitive nature of grand jury proceedings. These concerns are borne out in the legislative debates and compromises discussed in the text of this part of the opinion.

there would be cans and dead cats and broken windows and fires started and everything else. And those people have got to feel that they can . . . make a complaint and have that complaint somehow sounded out or at least have it used to start an investigation without feeling that they themselves might be subject to retribution. That is just a minor example." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 3, 1985 Sess., p. 1038.

Indeed, even if the complaining witness would be willing to testify in response to the compulsion of a subpoena, he may be unwilling to approach law enforcement authorities with vital information if there is a possibility that his initiation of that contact could become public, thus subjecting him to potential retribution. The risk of retribution should such involvement become public would likely dissuade fearful witnesses from contacting authorities, thus hampering law enforcement efforts, particularly in those criminal contexts in which the use of the investigative grand jury is most critical, i.e., political corruption, public fraud and organized crime. See General Statutes § 54-47b (2). This danger is equally prevalent in a case in which the grand jury declares that *no* probable cause exists to believe that the individual under suspicion committed the crime or crimes alleged in the application. If the term "record" is read to include the application and order, then the individual subject to investigation may gain access to the application pursuant to § 54-47g (b). There is little doubt that the application would reveal, directly or indirectly, the identity of the initial accuser or accusers, thus subjecting even the honest complainant to potential retribution, legal or otherwise, should the investigation fail to bear fruit. We are confident that the potential public disclosure of this information would dissuade many prospective witnesses from becoming involved in the investigation.

On the other hand, construing the grand jury statutes in this manner in no way compromises the defendant's right to present a defense because a state's attorney has a duty, grounded in the defendant's constitutional right to due process, to disclose any exculpatory evidence that may be contained in the sealed order or application. See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process [when] the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"); accord *State* v. *Walker*, 214 Conn. 122, 126, 571 A.2d 686 (1990).

In the normal course, the state's attorney who prosecutes a criminal case resulting from a grand jury's finding of probable cause also will be in possession of the application and under a duty to divulge to the defendant any exculpatory information contained therein.[31] Moreover, General Statutes § 54-47f (f) provides: "Any attorney appointed to assist in conducting the investigation shall disclose to the investigatory grand jury any exculpatory information or material in his possession, custody or control concerning any person who is a target of the investigation." In this way, any exculpatory information in the hands of the prosecuting authority would

---

[31] Although we recognize that General Statutes § 54-47c (a) also authorizes "[a]ny judge of the Superior Court, Appellate Court or Supreme Court" to apply for an investigative grand jury, this authorization may be constitutionally suspect when considered in light of article twenty-three of the amendments to the constitution of Connecticut, which provides in relevant part: "There shall be established within the executive department a division of criminal justice which shall be in charge of the investigation and prosecution of all criminal matters. . . . The prosecutorial power of the state shall be vested in a chief state's attorney and the state's attorney for each judicial district. . . ." Thus, we limit our discussion to grand juries initiated by application of the chief state's attorney or a state's attorney, either of whom undoubtedly has a duty to disclose material, exculpatory information to a criminal defendant under *Brady* v. *Maryland*, supra, 373 U.S. 83.

become part of the record and thus eligible for disclosure.

In this somewhat unusual case, however, Connelly, the state's attorney who filed the application, will not be the prosecutor at the petitioner's criminal trial. We see no reason, however, why the state's constitutional duty to disclose exculpatory evidence to a criminal defendant upon request should be dependent on the identity of the prosecuting attorney. Indeed, federal precedent suggests otherwise. See *Giglio* v. *United States*, 405 U.S. 150, 154–55, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) (prosecuting attorney charged with knowledge of, and duty to disclose, exculpatory information known only to attorney who presented government's case to grand jury but who was not involved in criminal prosecution); see also *Kyles* v. *Whitley*, 514 U.S. 419, 438, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995) (knowledge of *Brady* materials imputed to prosecutor when only police investigators actually were aware of exculpatory information); cf. *Drake* v. *Portuondo*, 553 F.3d 230, 240 (2d Cir. 2009). Indeed, Connelly clearly is under a constitutional obligation to turn over any *Brady* materials of which he has knowledge to the prosecuting state's attorney, who, in turn, must turn over such materials to the petitioner.[32] See Practice Book § 40-11. Thus, the state's fear that, in the present case, the prosecuting attorney's "ability to state, with any certainty, that everything discoverable under *Brady* [has] been disclosed to the [petitioner] was compromised" is misplaced. In fact, the state acknowledges in its brief that it was able to determine and to prove to the satisfaction of the trial court in the pending criminal case against the

---

[32] Common sense dictates that exculpatory information is highly unlikely to be included in an application for an investigative grand jury. The prosecuting authority is under no obligation to include such information in the application, and, to the extent that information contained therein eventually might lead to the discovery of exculpatory evidence, there is little question that that evidence would be subject to the *Brady* rule.

petitioner that all of the factual information contained in the application had been disclosed to the petitioner.

To the extent that the public has an interest in the disclosure of what little relevant information might be contained *exclusively* in the application or order, we believe that that interest is outweighed by the policy of protecting witnesses who come forward to provide information leading to the initiation of a grand jury investigation. Although we recognize that the legislature has vested the grand jury and the panel with the discretion to disclose evidence gathered as a result of a grand jury investigation, our careful review of the grand jury statutes leads us to conclude that the legislature, by virtue of § 54-47e, intended to remove that discretion with respect to the application and order. In our view, the legislature struck this careful balance between disclosure and confidentiality in order to encourage individuals with knowledge of serious crimes to communicate such knowledge to law enforcement officials without fear that their participation might someday be publicly revealed. In the absence of an express statement by the legislature to the contrary, we decline to upset this delicate balance.

Finally, we do not believe that our decision in *State v. Rivera*, supra, 250 Conn. 188, a case in which this court closely considered the statutes at the heart of the present controversy, and which strongly informed the Appellate Court's decision; see *In re Judicial Inquiry No. 2005-02*, supra, 104 Conn. App. 410–12, 415; is apposite to our resolution of the issue in the present case. In *Rivera*, the defendant, Matthew Rivera, was subpoenaed to testify before an investigatory grand jury, and the state sought to introduce his testimony as evidence in a subsequent criminal trial. See *State v. Rivera*, supra, 189. The trial court granted Rivera's motion to preclude the state from using his grand jury testimony against him in its case-in-chief at the criminal trial; id., 194, 197;

and the state appealed. Id., 197. The trial court reasoned that, although the state was free to use Rivera's grand jury testimony for "the development of evidence from other sources"; id., 195; the grand jury statutes prohibited such testimony from being used against him in the state's case-in-chief. Id., 194–97. On appeal, we determined that the trial court incorrectly concluded that the state could not use Rivera's grand jury testimony in its case-in-chief. See id., 198.

We proceeded to analyze the grand jury statutes, noting that "the relevant statutory provisions do not explicitly address the question of whether the state may use the grand jury testimony of a witness in its case-in-chief in a subsequent criminal proceeding in which that witness is the defendant. Those statutory provisions, however, contain no express bar to such use of grand jury testimony by the state." Id., 199. We emphasized that "§ 54-47g (a) affords prosecutors 'access' to the grand jury record upon request and without a hearing." Id. We reasoned that it would be unwieldy, if not absurd, to allow the state access to a defendant's grand jury testimony for any other purpose but nevertheless require it to seek the court's permission to use it in its case-in-chief. Id., 200, 208.

We also addressed Rivera's argument that, "because the common law favored secrecy and confidentiality in grand jury proceedings, we necessarily must resolve any claim under our statutory scheme in favor of secrecy unless those statutory provisions explicitly have abrogated the requirement of secrecy." Id., 202. We noted the purposes behind the common-law tradition of grand jury secrecy, including securing the safety and willingness of witnesses to testify and minimizing the risk that a suspect about to be indicted would flee. Id. We further declared, however, that "[t]he secrecy of grand jury proceedings . . . never has had as a goal the protection of grand jury witnesses who, without

immunity, voluntarily incriminate themselves during their sworn testimony." Id., 203. Thus, *Rivera* was concerned with the use to which testimony obtained during the course of the investigation could be put by prosecutors to whom that testimony already had been disclosed. There simply was no consideration in *Rivera* of the issue with which we are faced in the present case. In light of this distinct factual and legal context, we conclude that *Rivera* is not particularly helpful and does not control our resolution of the present case.

We conclude that the order and application are not a part of the record of the grand jury investigation and thus must be sealed pursuant to § 54-47e. The legislature did not vest the panel with discretion to make public disclosure of the order and application. We conclude, therefore, that the Appellate Court improperly ordered the panel to conduct a hearing on the request for disclosure of the application and order.

The judgment of the Appellate Court is reversed and the matter is remanded to that court with direction to render judgment denying the relief requested in the petition for review.

In this opinion the other justices concurred.